U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUL 2 5 2016

TONY R. MOORE  CLERK
BY _____
                    DEPUTY

UNITED STATES DISTRICT COURT                    b

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

ROBERT BRUCE                 CIVIL ACTION NO. 1:11-CV-01541
                             SECTION "P"

VERSUS                       JUDGE TRIMBLE

BODIE LITTLE, et al.         MAGISTRATE JUDGE PEREZ-MONTES

---

## REPORT AND RECOMMENDATION

Before the Court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, *in forma pauperis*, by pro se Plaintiff Robert Bruce ("Bruce") on August 23, 2011 and amended on August 30, 2011 (Doc. 4) and September 29, 2014 (Doc. 47).   The remaining named Defendants are Winn Parish Sheriff Cranford L. Jordan[1] ("Jordan"), former Winn Parish Sheriff Bodie Little ("Little"), Winn Parish Jail Warden Daniel Alsup ("Alsup"), Tommy Foster ("Foster"), Walter Hampton ("Hampton"), and Assistant Warden Phillip Vines ("Vines"), all employed by the Winn Parish Sheriff.

Bruce contends that, while he was incarcerated in the Winn Parish Jail ("WPJ"), he was subjected to an unsafe condition of confinement in the shower; denied medical care for an injury he sustained when he slipped and fell in the shower; denied medical care for his coronary artery disease (he alleges that he had a quadruple bypass prior to being transferred to the Winn Parish Jail); denied medical care for his

---

[1] Sheriff Jordan was substituted for "Winn Parish Sheriff's Office" (Doc. 56).

eye problems; and alleges breathing difficulties due to exposure to environmental tobacco smoke ("ETS") in the jail (Docs. 1, 4, 47). Bruce seeks monetary damages and injunctive relief[2] against the Defendants. Bruce is currently residing in Alexandria, Louisiana (Doc. 84).

Bruce's complaint was dismissed (Doc. 18). On appeal, and the Fifth Circuit Court of Appeal reversed the district court in part and remanded for further proceedings as to Bruce's conditions of confinement claims (regarding the shower and ETS) and denial of medical care claims (Doc. 29). Subsequently, Bruce's action against Hampton was dismissed with prejudice (Doc. 95).

Defendants answered the complaint (Docs. 43, 58, 63, 64, 66) and filed a motion for summary judgment (Doc. 86).[3] Bruce filed a response to Defendants' motion (Doc. 91). Defendants' motion is now before the Court for disposition.

<u>Law and Analysis</u>

<u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that the Court shall grant a summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the

---

[2] Since Bruce is no longer confined in the WPJ, his request for injunctive relief against the defendants is moot. <u>See</u> <u>Beck v. Lynaugh</u>, 842 F.2d 759, 762 (5th Cir. 1988) (citing <u>DeFunis v. Odegaard</u>, 416 U.S. 312 (1974)); <u>Savidge v. Fincannon</u>, 836 F.2d 898 (5th Cir. 1988).

[3] Defendants filed a notice of compliance (Doc. 45) with Bruce's medical records. However, the medical records filed (over 600 pages) are from after Bruce was transferred out of the WPJ and have little to no relevance.

court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order.

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

Substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), cert. den., 528 U.S. 906 (1999).

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then offer evidence sufficient to establish a genuine issue of material fact for trial. In this analysis, the Court reviews the facts and draws all inferences most favorable to the nonmovant. See Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. See Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992), cert. den., 506 U.S. 825 (1992).

3

Shower Slip and Fall

Bruce contends he slipped and fell in the WPJ shower because, due to standing water, he had to stand on a milk crate in the shower and he tripped on it. Bruce also contends he was denied medical care for his injuries from the slip and fall.

### 1. Responsibility for Shower Drain

Bruce contends there was always two to three inches of water standing in the shower because it did not drain very well, so inmates were provided with a milk crate to stand on in the shower (Doc. 1). Bruce alleges, and Defendants admit in their statement of undisputed facts that, while Bruce was showering on March 27, 2011, inmate Walter Hampton poured ice on Bruce, he slipped on the ice and the crate slipped out from under him, causing him to fall (Docs. 1, 86-1).

Defendants show in their statement of undisputed facts that Bruce was incarcerated in the WPJ from February 14, 2011 to September 30, 2011 (Doc. 86-1). Defendants further show, in affidavits by Little and Jordan, that Little was the sheriff of Winn Parish from July 1, 2008 to March 7, 2012 and that Jordan has been the Winn Parish Sheriff since March 7, 2012 (Docs. 86-4, 86-5). Jordan was not the sheriff, nor was he employed by the Winn Parish Sheriff's Office, during the time Bruce was incarcerated at the WPJ. Alsup was the warden and Vines was the assistant warden at WPJ in 2011 (Docs. 86-6, 86-8).

WPJ is located on the top floor of the Winn Parish Courthouse, which is owned and maintained by the Winn Parish Police Jury (Docs. 86-1, 86-4, 86-5, 86-6, 86-8).

4

Bruce admits the Winn Parish Police Jury was responsible for the maintenance of the WPJ (Doc. 91-1).

Defendants concede that the WPJ building is old and the drainage in the shower is slow (Docs. 86-1, 86-4). Defendants further state the shower is a single stall and has always drained, although slowly, and inmates had the option of reducing the water flow from the shower head so the drainage could keep up with the water volume flowing out of the shower head (Docs. 86-1, 86-4, 86-5, 86-6, 86-8). Inmates were not required to stand in water left over from a previous inmate's shower, and standing on a milk crate was optional (Docs. 86-1, 86-4, 86-5, 86-6, 86-8).

Defendants show that maintenance workers and plumbers, employed by the Winn Parish Police Jury, worked on the shower drain several times in an effort to improve the drainage (Docs. 86-6, 86-8).

The Sheriff is the "keeper of the public jail of his parish." See La. R.S. 15:704; Howard v. Fortenberry, 723 F.2d 1206, 1210 n.9 (5th Cir. 1984), vacated in part on other grounds, 728 F.2d 712 (5th Cir. 1984). Under Louisiana law, the sheriff has the duty of operating the jail and properly caring for the prisoners. See Thompkins v. Belt, 828 F.2d 298, 304 n.8 (5th Cir. 1987) (citing O'Quinn v. Manuel, 773 F.2d 605, 609 (5th Cir. 1985)).

The police jury is required to provide a good and sufficient jail, La. R.S. 33:4715, to be responsible for the physical maintenance of all parish jails and prisons, La. R.S. 15:702, and to pay all expenses incurred in "the arrest, confinement, maintenance and prosecution of persons accused or convicted of crimes," La. R.S.

15:304.  The Police Jury has no responsibility over the daily operation of the jail.  The administration of the jails is the exclusive province of the sheriff.  O'Quinn v. Manuel, 773 F.2d 605, 609 (5th Cir. 1985).

In Amiss v. Dumas, 411 So.2d 1137, 1141 (La. App. 1st Cir. 1982), writ den., 415 So.2d 940 (La. 1982), the court discussed the relative responsibilities of the police jury and the sheriff with respect to the parish jail, as follows:

> The general scheme which we gather from a reading of all of the statutes is that the City-Parish is responsible for the expenses of establishing, maintaining and operating the jail and for all the expenses of feeding, clothing, and providing medical treatment to the prisoners[,] while the sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for, fed and clothed.
>
> These statutes, in effect establish that prisoners incarcerated in the parish jail, either awaiting trial or serving parish sentences, are wards of the parish and the sheriff is simply the warden ("keeper") of the parish jail....
>
> La.R.S.15:702 places the responsibility for the physical maintenance of all parish jails and prisons upon the governing authority of each parish. No distinction is made therein between major and minor repairs, major and minor appliances, the general responsibility of the parish governing authority to maintain the prison and the supplies necessary for daily routine maintenance.  This statute, along with La.R.S. 33:4715, which requires that the governing authority provide a "good and sufficient jail," mandates that the parish prison governing authority is responsible for establishing and maintaining the parish prison which includes all equipment and supplies necessary for the establishment and proper maintenance of the jail.

See Central Louisiana Bank & Trust Co. v. Avoyelles Parish Police Jury, 493 So.2d 1249, 1257 (La. App. 3d Cir. 1986); Howard, 723 F.2d at 1210 n.12; Jacoby v. State of Louisiana, 434 So.2d 570, 574 n.3 (La. App. 1st Cir.), writ den., 441 So. 2d 771 (1983).

It is clear the named defendants, none of whom are the Winn Parish Police Jury or members thereof, were not responsible for maintenance of the shower drain at the WPJ. Even if defendants provided the milk crate for inmates to stand on in the shower, Bruce admitted he slipped on ice because another inmate had dumped ice in the shower. Bruce did not slip because there was a milk crate in the shower or because the shower did not drain quickly. Bruce has also failed to establish a genuine issue of fact that any other action by Defendants was a proximate cause of his fall. Therefore, Bruce has not alleged or shown that any of the named defendants caused him to slip and fall in the shower.

Since there are no genuine issues of material fact which would preclude a summary judgment, Defendants' motion for summary judgment (Doc. 86) should be granted on the issues of the WPJ shower and Bruce's slip and fall (Doc. 86).

## 2.   Medical Care After Fall in Shower

Bruce contends he injured his chest, back, neck, shoulder, both knees, and his left hand when he fell in the shower (Doc. 1). Defendants maintain that they provided treatment for Bruce's injuries (Doc. 86-1).

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976). A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum

civilized measure of life's necessities.   Second, a prison official must have a sufficiently culpable state of mind–deliberate indifference to a prisoner's constitutional rights–to be subjected to § 1983 liability. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).   The Supreme Court defined "deliberate indifference" as "subjective recklessness," or a conscious disregard of a substantial risk of serious harm. See id. at 839.

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. See Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006) (citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001)).   A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. See Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

An affidavit by Tommy Foster, a part-time LPN at the WPJ in 2011, shows that, after Bruce slipped in the shower on March 27, 2011, Foster evaluated Bruce and provided him with medication (Doc. 86-7, p. 3/35).   Foster's notes show Bruce (age 60, BP 150/100) "fell out of shower," "slipped on ice," "c/o chest pain" that was treated with nitro, a scrape to left knee, and nausea that was treated with meclazine (Doc. 86-7, p. 3/35).   Bruce's chest pain resolved within ten minutes and his nausea

was gone soon thereafter (Doc. 86-7, p. 3/35). Within 35 minutes, Bruce reported no problems other than soreness (Doc. 86-7, p. 3/35).

Bruce has not offered any summary judgment evidence to show that he suffered any injury that was not appropriately treated by the medical staff. Since there are no genuine issues of material fact that would preclude summary judgment, Defendants' motion for summary judgment (Doc. 86) should be granted on the issue of Bruce's medical care.

Medical Care for Cardiac Problems

Bruce contends generally that he has chest pain "all the time," has had a quadruple bypass in the past, and Defendants denied him medical care for his chest pain.

Defendants show in their statement of undisputed facts (Doc. 86-1) and LPN Foster's affidavit (Doc. 86-7) that Bruce was sent to the Winn Parish Medical Center on August 24, 2011[4] with complaints of chest pain. Bruce's medical records from the Winn Parish Medical Center show he was admitted on August 24, 2011 with chest pain (Doc. 86-7, p. 7/35). Dr. Eric Dupree examined Bruce, and noted his history of status post-coronary artery bypass grafting (four vessel bypass) in 2010 and one stent prior to that (Doc. 8607, p. 8/35) and his current medications of Crestor, Plovix, Flomax, Indur, and Metopolol (Doc. 86-7, p. 16/35). Bruce admits he has carried nitroglycerin with him at WPJ (Doc. 1). Dr. Dupree further noted Bruce's current

---

[4] It appears that Bruce was sent to the medical center emergency room for his chest pain the day after he filed his complaint.

complaint that he felt faint, fell, blacked-out, and awakened short of breath and with some chest pain centrally and radiating into his left shoulder (Doc. 86-7, p. 8/35).

An EKG showed tachycardia and a right bundle branch block but no other acute abnormality. His chest x-ray showed postoperative sternal sutures, his cardiac enzymes were negative, his liver functions were fine, his magnesium and white blood cell count were normal, and his other lab work was normal, except his blood sugar was elevated (Doc. 86-7, p. 9/35). Bruce's preliminary diagnosis by Dr. Dupree was chest pain in a patient with known coronary artery disease and likely orthostatic hypotension (low blood pressure) (Doc. 86-7, p. 10/35). Bruce's discharge diagnosis, by Dr. Robert Fresh, was chest pain, dizziness, and dyspnea, with no evidence of ischemia (Doc. 86-7, p. 24/35). Bruce's chest pain was without diaphoresis or palpitations and his shortness of breath resolved, so he was released on August 25, 2011 (Doc. 86-7, pp. 7-8/35). On discharge, Bruce was instructed to maintain a low salt diet, continue his medications, gradually resume his normal activities, and return for further treatment if he had pain unrelieved by medication, nausea or vomiting, shortness of breath, or worsening of symptoms (Doc. 86-7, p. 32/35).

Former Sheriff Little described the WPJ policy that, if an inmate became ill, the jail nurse would be contacted to examine the inmate and determine the proper course of treatment. If the jailer on duty believed that immediate healthcare was necessary, the jailer would call an ambulance (Doc. 86-4). Little and Warden Alsup both state in their affidavits that they were not trained in medicine so they left all medical determinations and recommendations to the medical personnel at WPJ

(Docs. 86-4, 86-6). Little, Alsup, and Assistant Warden Vines stated in their affidavits that they never made any medical treatment decisions for Bruce (Doc. 86-4, 86-6, 86-8). Little, Alsup, LPN Foster, and Vines stated in their affidavits that they were unaware of any appointments with outside providers that Bruce was prohibited from attending (Docs. 86-4, 86-5, 86-7, 86-8). Alsup also states in his affidavit that he never denied or delayed medical treatment for Bruce's serious medical needs (Doc. 86-5).

Bruce has not offered any summary judgment evidence to show that he was denied cardiac care or medications by any of the named Defendants or that he suffered from untreated cardiac problems. Although Bruce alleges Defendants have, in the past, refused to take him to his appointments at the LSU Medical Center in Shreveport, he has not offered any specific evidence to show when that occurred or that it occurred without good reason. Defendants have denied canceling his appointments.

As part of the relief sought, Bruce asked to be taken to a doctor and he was. Since there are no genuine issues of material fact that would preclude a summary judgment, Defendants' motion for summary judgment should be granted.

Breathing Problems Cause by ETS

Bruce contends that, while he was incarcerated in the WPJ, he had breathing problems due to ETS.

Defendants show in their statement of undisputed facts and Little's and Vine's affidavits that smoking was prohibited inside the WPJ in 2011 (Docs. 86-1, 86-4, 86-

8).  Alsup states in his affidavit that, when he became warden of the WPJ in 2009, he banned all smoking inside the WPJ, and that the ban was implemented before Bruce arrived at the WPJ (Doc. 86-6).  Alsup further states in his affidavit that, when he found inmates with cigarettes in their possession, he confiscated them (Doc. 86-6). Vines states in his affidavit that he did not recall ever catching an inmate smoking cigarettes or marijuana inside the WPJ (Doc. 86-8).

Defendants also show in their statement of undisputed facts and Little's affidavit that, in 2011, the jail had windows that opened and a wall unit that provided both air conditioning and heating (Docs. 86-1, 86-4).  Bruce has not offered any medical or other evidence to support his claims of breathing problems and ETS inside the WPJ.  Since there are no genuine issues of material fact that would preclude a summary judgment, Defendants' motion for summary judgment should be granted on the issue of ETS causing breathing problems.

Eye Problems

Finally, Bruce contends generally that Defendants canceled his eye appointments at LSU-Shreveport.  Apparently, Bruce has glaucoma.  The doctors at the Winn Parish Medical Center noted that he was taking three kinds of eye drops for glaucoma (Doc. 86-7, pp. 16-17/35).

Bruce has not offered any evidence to support his claim that his eye appointments were cancelled, or cancelled without good reason, and Defendants deny having done so.  It is apparent from the record that Bruce received medication for his glaucoma.

Since there are no genuine issues of material fact that would preclude a summary judgment, Defendants' motion for summary judgment should be granted on the issue of medical care for Bruce's eye problems.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Defendants' motion for summary judgment (Doc. 86) be GRANTED and that Bruce's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana on this

_____ day of July 2016.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge